The COMMONWEALTH, to the use of STUB, *v.* WILLIAM STUB et alios.

1. The liability of a surety in an official bond being contingent, suit cannot be brought against a surety by a party in interest, whether creditor, legatee, or distributee, without proceeding in the first place against the administrator or executor, and fixing him personally for the debt.

2. The settlement of a general account by an executor, disclosing a general balance in his hands, does not so fix the executor as to enable a distributee to maintain an action on the official bond.

3. It is not required that the executor should be pushed to insolvency: a judgment at law or a decree of the Orphans' Court, ascertaining the amount of the personal responsibility of the executor to the particular creditor, legatee, or distributee, suing on the bond, is all that is necessary as a pre-requisite to such suit.

4. These principles extend to a bond given by one of two executors for the faithful performance of his duties, though it was not an original or a joint administration-bond.

Error to the Common Pleas of Berks county.

*June* 18. This was an action of debt on a bond, in which the Commonwealth, to the use of Peter Stub, Jacob Stub, and Sarah Anspach, was plaintiff, and William Stub, George Forrer, and Henry Deck were defendants. It was brought to recover the shares of Peter and Jacob Stub, and of Sarah Anspach, in the balance of the personal property of their father, Adam Stub, deceased, remaining in the hands of William Stub, one of the executors of the will of the said Adam.

On the trial, the plaintiff gave in evidence the following bond, executed by the defendants :—

"Know all men by these presents, that we, William Stub, George Forrer, and Henry Deck, all of Berks county, are held and firmly bound unto the Commonwealth of Pennsylvania, in the sum of seven thousand dollars, lawful money of the United States, to be paid to the said Commonwealth of Pennsylvania, or to its certain attorney or assigns; to which payment well and truly to be made and done, we bind ourselves, our heirs, executors, administrators, and every of them, jointly and severally, firmly by these presents. Sealed with our seals, and dated this tenth day of August, in the year of our Lord one thousand eight hundred and thirty-eight.

"Whereas, Adam Stub, in and by his last will and testament, appointed the said William Stub, and a certain Michael Stub, his executors, who took upon themselves the burthen of administering said estate; and whereas certain moneys, goods, and effects have come into possession of said William Stub, and may hereafter come into his possession to be administered.

"Now the condition of this bond is such, that if the above bounden William Stub, executor as aforesaid, shall render a true and just account of his management of the property and estate of said deceased, under his care, and shall in all respects faithfully perform the duties of executor, then the above obligation shall be void, otherwise it shall be and remain in full force and virtue."

Also, the will of Adam Stub, dated July 5th, 1832, and proved November 12, 1832, with letters testamentary of that date to Michael Stub and William Stub, his executors. This will directs his property to be equally divided among his children.

Also, the account of the said Michael Stub and William Stub, filed March 7, 1834, showing a balance due from the executors of $1,055.43.

It was admitted that there were twelve children of Adam Stub, of whom the persons for whose use this suit is brought are three.

The amount sought to be recovered was three-twelfths of $1,055.00. Here the plaintiff rested.

The defendant, to maintain the issue on his part, offered to prove that when the bond was given, there was in court about $13,000, arising from sales of realty, and to prove generally what is contained in the following notice of special matter:—

"That there was a mistake made by the scrivener in drawing up this bond, upon which this action has been brought, and a like mistake in the execution of the same, by the obligors. That there was at that time the sum of $13,040.53 deposited in the Court of Common Pleas of Berks county, as a part of the assets belonging to the estate of Adam Stub, deceased, arising from the sale of a farm late the estate of said deceased. That William Stub, as one of the executors, applied to the said court for permission to take out of court the half-part of the said $13,040.53, to wit, $6,520.26½, and the said court entertained the application of the said executor, upon a condition there suggested by the plaintiffs or their counsel, that the said William Stub, executor, should give security by bond in the Orphans' Court for the just and legal administration of the said sum of $6,520.26½, and at the same time the said court approved of George Forrer and Henry Deck, the two other defendants, as bail for the said purpose, whereupon the bond in question in this said suit was drawn up at bar and executed. That in drawing up said bond, there was a departure from the directions of the court and agreement of the parties, as it was so drawn as to include in its provisions and conditions all the acts of the said executors so far back as the year        , in receiving the goods, chattels, effects, and moneys of the said testator's estate. That the bond thus erroneously drawn was mistakenly executed, supposing it covered in its conditions only the sum to be taken out of court. That it should not have been drawn or executed for more than the sum of $6,520.26½, and that without any retrospective condition or operation. That its operation as security for the goods, chattels, moneys, and effects before that time received by the said executor, William Stub, jointly with his co-executor, Michael Stub, was not then understood, nor so intended by the court nor the parties. That it was not then intended nor understood to be security for the inventory filed many years before, nor administration account long before that time filed jointly by said executors, nor to secure any supposed balance due upon that administration account, or on devastavit. That, though there appears to be a balance due upon that administration account, yet,

in point of fact, that is not so, inasmuch as the heirs were indebted to the estate for advancements made and goods purchased at the sale of the personal estate of said testator. That the said sum of $6,520.26½ had been paid out by the said William Stub, executor, to the several claimants of it, under decree of the said Orphans' Court, and long before this suit was brought, and largely overpaid."

To the admission of this evidence the plaintiff objected, but the court admitted the same, so far as the evidence went to show an express agreement; and the admission of this evidence was the subject of the plaintiff's first bill of exceptions. The defendant then produced witnesses to sustain his offer, as admitted by the court; and subject to the same exception, further gave in evidence the record of an action of ejectment, Leis v. John and William Stub, with notice, &c., No. 127, November Term, 1834, in which there was a rule taken, 13th August, 1838, to show cause why William Stub, one of the executors of Adam Stub, deceased, should not take out of court $6,520.26, being the one-half the amount due the estate of said Adam. On the 14th August, 1838, that rule was made absolute. With this the defendant rested.

The plaintiff then gave in evidence a petition to the Orphans' Court, of ten of the children of Adam Stub (including Michael, the other executor), for a citation to William Stub, to show cause why he should not be removed from his executorship, &c. On the 9th January, 1835, a citation was awarded, and afterwards returned served. At April and at August Terms following, the proceeding was continued, and at November Term, 1835, it was marked, "held under advisement, until an ejectment suit pending shall be tried." Subsequent to this, no entry of any action of the Orphans' Court in the matter is to be found. The bond in controversy was filed in Orphans' Court on 13th August, 1838.

Upon the cross-examination of two witnesses produced by the plaintiff, the defendant proposed to ask them, if anything was said in court, at the time, about any other money than the $6,520.26, and whether any other matter was before the court, which was objected to by the plaintiff; but the objection being overruled, the admission of the questions constituted the subjects of the plaintiff's second and third bills of exceptions.

The plaintiff then moved the court to rule out the testimony of the witnesses produced by the defendant—the cross-examination of his own witnesses, so far as relates to the matter heretofore excepted to—first jointly, and then separately—which the court refused to do. And this refusal of the court so to treat this testi-

mony, constituted the subject of the plaintiff's fourth bill of exceptions.

The court (JONES, President) charged the jury as follows :—

"We are of opinion, that the plaintiffs in this case cannot recover, and that upon a point of law, entirely independent of the testimony, which has been adduced by the defendants for the purpose of establishing mistake in the writing of this bond.

"This is an official bond, or it is not. It is assumed not to be an official bond; and yet the course of remedy followed here is that prescribed by the act of Assembly in suing upon official bonds, when, if it is not an instrument of that character, the remedy would be at common law, and there could not be a general verdict for the Commonwealth for the penalty, and an assignment of damages for those in use. In asking that your verdict should be moulded into that shape, the plaintiffs treat this as an official bond.

"But, whether it is an official or voluntary bond, the executors should have been first fixed for the amount of their indebtedness to the plaintiffs. The extent of their liability should have been determined. The report of the auditors, it is true, ascertains that a certain balance is due the estate of George Adam Stub, from his executors; and this suit is brought to recover the shares of the plaintiffs therein. How can it be known here how much these plaintiffs may be advanced, or what debts there may be against the estate? There has been no distribution made in the Orphans' Court, whose jurisdiction exclusively embraces those matters. Nothing has been done there, further than merely to ascertain this balance due this estate. Upon that the extent of the liability of these executors is not ascertained, as far as the plaintiffs are concerned.

"In Myers v. Fritz, 4 Barr, 344, the cases bearing on this point are reviewed, and there the law is affirmed to be 'that the liability of the surety is contingent, and not absolute, and, therefore, before suit can be brought against the surety, the party in interest, whether creditor, legatee, heir, or distributee, must proceed against the administrator, and fix him personally for the debt.' That has not been done in this case; and your verdict must be for the defendants."

The assignments of error, upon which the argument in this court principally turned, were to the charge:

In charging, "that in this case the plaintiffs cannot recover."

In charging, that "the executors should have been first fixed for the amount of their indebtedness to the plaintiffs."

*N. D.* and *W. Strong,* for plaintiff in error.—The objection, that the plaintiff cannot recover, was not available under the plea of payment, with leave, &c., and the notice given.

The plea of payment admits the cause of action : Abbott *v.* Lyon, 4 W. & S. 38 ; Gillinger *v.* Kulp, 5 W. & S. 264.

The doctrine in Myers *v.* Fritz, 4 Barr, 344, as applied to *distributees* after account filed and confirmed, is perhaps new. This may be inferred from the fact, that this very case, previous to that decision, was in this court, and so obvious and fatal a defect not adverted to. How far the court, in the case of Myers *v.* Fritz, were induced to extend the doctrine of the contingent liability of sureties, beyond what it had previously been carried, by the suspicion that a fraud was attempted in that case, it is not for us to know.

This court had previously intimated otherwise in Commonwealth *v.* Bryan, 8 S. & R. 128, where a distinction is taken between creditors and distributees ; Commonwealth *v.* Evans, 1 Watts, 437, is the case of a creditor ; Commonwealth *v.* Wenrich, 8 Watts, 160, is the case of a legatee ; and the reasoning of the court applies exclusively to persons standing in their relations. In Moody *v.* Stewart, 4 Watts, 169, a case not unlike this, it was held the surety might be sued in the first instance.

*H. W. Smith,* for defendant in error.

The opinion of this court was delivered by

ROGERS, J.—The liability of a surety in an official bond being contingent, suit cannot be brought against a surety by a party in interest, without proceeding in the first place against the administrator or executor, and fixing him personally for the debt. This was first ruled in The Commonwealth *v.* Evans, 1 W. 437, in the case of a creditor ; next, The Commonwealth *v.* Wenrich, 8 W. 160, a legatee ; afterwards extended in Myers *v.* Fritz, 4 Barr, 346, to a distributee. The two first are conceded to be ruled correctly, but doubts are expressed as to the last. The *dictum* in Myers *v.* Fritz as applied to distributions is said to be new, and it is insinuated that perhaps the court were inclined to extend the principle of the contingent liability of sureties beyond its legitimate limits, by the suspicion that a fraud had been attempted in that case. As the Commonwealth *v.* Evans was the first case where the principle was ruled as to creditors, so Myers *v.* Fritz was the first where it applied to distributees. In that aspect both cases may be said to

be new. It was there thought, as it is still, that the principle which governs one also·governs the other; that there was no perceptible distinction between creditors, legatees, and distributees. It must be remembered that in that case, as in this, although the administrator settled his general account with the estate, disclosing a general balance in his hands, yet there was no decree of the Orphans' Court ascertaining the amount owing by the administrator to the respective distributees; nor has there been any judgment at common law, fixing the extent of his indebtedness. The settlement of the account exhibits only the residue of the estate after payment of debts. The payments that from time to time may be made to the distributees, form no part of the account, and when properly settled, cannot appear except as an apparatus which sometimes exhibits the state of the accounts as between him and the distributees. It consequently happens that a settlement confirmed by the court, may exhibit the administrator largely in arrears, when he may owe little, if anything, to the respective distributees. The report of the auditors here, only ascertains that a certain sum is due the estate of George Adam Stub from the executor, but it nowhere appears how much the plaintiffs, who are some of the heirs and distributees, may have been advanced, or what debts there may be against the estate. There has been no distribution or decree of the Orphans' Court ascertaining these essential matters; nor has there been any suit at law in which their rights have been investigated and fixed. Clearly, therefore, the same reason applies to distributees, as to creditors and legatees.

But it is contended the principle ought not to be extended to this case, because this is not an original administration-bond, nor a joint administration-bond. That it was given in part at the instance of the co-éxecutor, and for his security. That the co-executor petitioned for the citation, and resisted the payment to William Stub, the other executor, of any portion of the proceeds of the real estate. That a suit against the executors must be a suit against both; but the bond is given by one. To hold, therefore, as the defendant in error contends, that both executors must be prosecuted to insolvency, before the bond, specially and voluntarily given, can be made available to the distributee, of which the co-executor is one, is carrying the doctrine much further than in the case of Myers v. Fritz, and is defeating the very object of the bond. These suggestions are more plausible than sound. Although this is neither an original nor a joint bond, it comes within the reason of a rule designed for the protection of the sureties, who ought not to be

held liable until the amount of the indebtedness of the principal is ascertained. It is not intended for the security of the co-executor alone, but for the benefit of every person interested in the estate, whether they be creditors, legatees, or distributees. Although not an original administration-bond, it partakes of the nature of an original bond, and is designed for the same purpose. If, as supposed, the distributee would be bound to sue both the executors, and prosecute them to insolvency, it would present some difficulty; but I do not see the necessity of either course. It is not required that the principal should be pushed to insolvency, as may be inferred from an inadvertent expression in Myers v. Fritz. A judgment at law, or a decree of the Orphans' Court, fixing the amount of their personal responsibility, is all that is necessary as a pre-requisite to suit on the bond: 1 Watts, 437; 8 Watts, 160. Nor would it be required, under the facts disclosed, to bring an action against both the executors. A suit against William Stub, who alone sealed the bond, or what perhaps would be the better mode, a decree against him by the Orphans' Court, would suffice.

As the cause is affirmed for the reasons given, it becomes unnecessary to notice the bill of exceptions to the admission of the testimony, except merely to remark, that we see no material difference between the case as now presented, and the same case reported in 3 Barr, 251.

Judgment affirmed.